438 So.2d 210 (1983)
STATE of Louisiana
v.
James KENNEDY.
No. 83-KA-0071.
Supreme Court of Louisiana.
September 23, 1983.
*211 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., William C. Credo, III, Asst. Dist. Atty., Jo Ellen McMillen, Kerry Hogan, Kenneth Lassus, Asst. Dist. Attys., for plaintiff-appellee.
Charles L. Elloie, New Orleans, for defendant-appellant.
PER CURIAM.
Defendant and one Jerome Richardson were charged together by grand jury indictment with aggravated rape in violation of La.R.S. 14:42. After the trial court granted Richardson's motion for a severance, defendant appeared alone before a jury on November 16, 1981. He was found guilty as charged. On December 8, 1981, the trial court sentenced him to the mandatory term of life imprisonment at hard labor. Defendant has now appealed his conviction and sentence to this Court urging four assignments of error filed below. On the present record, we find no reversible error in any of the assignments and conditionally affirm defendant's conviction. However, we note that at the hearing conducted on defendant's motion to suppress his confession the state failed to rebut his specific and detailed allegations of physical abuse by the arresting officers. Accordingly, we remand the case to the district court for retrial of the motion. State v. Franklin, 381 So.2d 826 (La.1980); State v. Stevenson, 374 So.2d 1189 (La.1979); State v. Simmons, 328 So.2d 149 (La.1976).
Evidence adduced at the hearing on the motion to suppress showed the following. On the night of June 9, 1981, two young men sexually assaulted the victim in this case. One of the perpetrators also shot the victim's boyfriend several times in the head with a small caliber pistol, although he did not kill him. Shortly thereafter, Detective Frank Murtagh acted on a report of the incident and stopped Jerome Richardson as he walked along the Jefferson Highway. Richardson ultimately agreed to take the detective to the Model Motel on Jefferson Highway where defendant and two friends had rented a room. According to Murtagh, when he arrived at the motel, he was joined by Deputy Sheriffs Hymel and Denoux outside defendant's room. Together, the officers crashed through the door, held fast only by a "flimsy" lock, grabbed one occupant of the room each, and threw them up against the wall. The officers then separated defendant and his friends and began questioning them individually, after first advising them of their Miranda rights. It quickly became apparent from the other occupants of the room that defendant was the prime suspect, and when the officer led him outside, he was immediately identified by Richardson, who had remained behind in Murtagh's car. After a brief trip back to the scene of the rape in a futile effort to recover the pistol used to shoot the victim's boyfriend, the officers then took defendant to the Harahan lock-up and turned him over to Captain John Doyle and Lieutenant Odom Langford. Doyle read defendant his rights from a printed waiver form, obtained his signature on the waiver, and then began the interview that led to the confession.
*212 Doyle and Langford denied using any threats, promises or coercion to obtain the statement. In addition, Langford testified that he had seen no marks on defendant's face and had been looking for them "... because he had said that he had been hit about the face." Murtagh and Hymel, who followed the detective to the stand at the hearing, also claimed that they used no more force than necessary to grab the occupants of the motel room as an initial matter and place them up against the wall. The officers specifically denied striking defendant or using their service revolvers to threaten him, and testified that they did not see anyone else beat him. However, defendant testified that six officers, not three, had taken part in the raid on the motel room. According to defendant, the officers separated him from his friends, led him outside, and began a beating that left him with sore ribs and a "busted lip." In addition, one of the officers took out his revolver and shoved the barrel of the weapon into his mouth for "about thirty (30) seconds." Defendant testified that while all six officers took part in the beating, one "in particular" had inflicted almost all of the damage. Asked by counsel whether he saw the officers in court, he replied "No." Defendant did not claim that Doyle and Langford had inflicted any additional abuse but explained that he gave the statement because he got tired of the other officers "... beating on me and stuff...." The other two occupants of the motel room also testified that they had seen the officer strike defendant and then kick him out of the door. However, they did not estimate the size of the raiding party or identify Murtagh and Hymel specifically.
At the close of the hearing, the trial court found that while there may have been "some scuffling" in the motel, the amount of force used by the officers to subdue defendant initially was not sufficient to induce his later confession and render it involuntary. We are satisfied on this record that the trial court did not abuse its discretion in concluding that only three officers had taken part in the raid and that Murtagh and Hymel did not personally strike or threaten the defendant or see anyone else abuse him. However, the third officer concededly on the scene, Deputy Denoux, did not testify at the hearing or at trial, and the record contains no explanation for his absence. We have repeatedly cautioned that because of its heavy burden of proving the voluntariness of a confession, the state must rebut a defendant's allegations of coercion specifically and "cannot simply rely on general testimony of officers not present that they witnessed no coercion, intimidation or other undue influence." State v. Monroe, 305 So.2d 902, 912 (La. 1972) (on rehearing). See also, State v. Franklin, supra; State v. Stevenson, supra. Hymel testified at the hearing that he was "watching my man...." in the motel room and Murtagh could state only that he kept track of defendant "... most of the time, intermittently...." The state therefore did not exclude the possibility that Deputy Denoux was the one officer "in particular" who took defendant outside, beat him, and shoved the barrel of his service revolver into his mouth. The last allegation by defendant was his gravest one. In State v. Jennings, 367 So.2d 357 (La.1979), we ordered suppressed a confession given by the defendant over 30 hours after a similar threat by a police officer. In this case, the time interval between arrest and interrogation was far shorter, and Denoux's threat with the revolver, if it occurred, did not likely leave any marks for Doyle and Langford to observe.
We therefore remand this case to the district court for another trial on the motion to suppress. Because retrial of the motion may eliminate the error here, we do not reverse defendant's conviction at this time. If the trial court finds that the confession was inadmissible, it must grant defendant a new trial. Otherwise, we reserve to defendant the right to appeal once more any adverse ruling on the motion. In the absence of such an appeal, his conviction and sentence will be affirmed. State v. Stevenson, supra; State v. Simmons, supra.
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; CASE REMANDED *213 FOR RETRIAL OF THE MOTION TO SUPPRESS.
MARCUS, WATSON and LEMMON, JJ., dissent from the remand. We would affirm the conviction and sentence.