572 So.2d 677 (1990)
STATE of Louisiana
v.
Danny F. FITCH.
No. 90/KA/0313.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
*678 Mark Rhodes, Asst. Dist. Atty., Houma, for plaintiff and appellee, State.
Matthew J. Barker, Thibodaux, for defendant and appellant, Danny F. Fitch.
Before SAVOIE, CRAIN and FOIL, JJ.
SAVOIE, Judge.
Defendant, Danny Paul Fitch,[1] was charged in a single bill of information with two counts of vehicular homicide, violations of LSA-R.S. 14:32.1. Defendant pled not guilty to these charges and filed a motion to suppress the results of the blood alcohol test administered to him. On May 3, 1989, (following a suppression hearing held on May 1 and May 3, 1989), the trial court granted the motion to suppress the test results.[2] On May 9, 1989, the state filed a motion to reconsider the May 3 ruling; and, on July 6, 1989, the trial court recalled the May 3 ruling and issued a new ruling denying the motion to suppress. Thereafter, defendant withdrew his pleas of not guilty and entered pleas of guilty to each of the charges, reserving the right to appeal the adverse ruling on the motion to suppress. See State v. Crosby, 338 So.2d 584 (La. 1976). For each count, the trial court imposed a concurrent sentence of imprisonment at hard labor for two years, a two thousand dollar fine and court costs of thirty-five dollars. Defendant has appealed, urging two assignments of error:
1. The trial court erred by granting the state's motion to reconsider the court's original ruling granting defendant's motion to suppress.
2. The trial court erred in reversing its original ruling granting defendant's motion to suppress.
The record reflects that, during the early pre-dawn hours of July 17, 1988, Louisiana State Trooper Ralph Daniel Mitchell, Jr., investigated an automobile accident; defendant was a driver of a vehicle involved in the accident which resulted in the two fatalities giving rise to the instant charges of vehicular homicide. After medical treatment had been secured for those involved in the accident, Mitchell had defendant transported to South Louisiana Medical *679 Center, where he arrived at about 3:30 a.m. on July 17.
Pursuant to Mitchell's request (at about 3:53 a.m. that same morning, Kelly Patrick LeFort (a registered nurse licensed to practice nursing in this state who was employed at South Louisiana Medical Center) used a Becton-Dickinson Number 4990 Blood Alcohol Kit to draw blood samples of defendant's blood. After the drawing of the blood specimens was completed, Mitchell took possession of the vials containing the blood samples. Mitchell took the specimens to State Police Troop C. The specimens remained at Troop C until Mitchell mailed the blood samples to the Louisiana State Police Crime Laboratory on July 25, 1988. On July 27, 1988 (the date on which the samples arrived at the Laboratory), Jerry Harrison, a toxicologist employed by the Laboratory, conducted a scientific analysis of defendant's blood samples. The analysis revealed that defendant's blood contained.15 grams percent ethyl alcohol.
At the suppression hearing held on May 1 and May 3, 1989, the state presented the testimony of LeFort, Harrison and Mitchell. At the conclusion of the presentation of the state's evidence on May 3, defense counsel argued inter alia that D-6 (the box which contained the blood alcohol kit used to draw defendant's blood which was introduced in evidence by the defense during the suppression hearing) was stamped with an expiration date of "7/88" indicating that the "shelf life" of the kit had expired before defendant's blood was drawn on July 17, 1988. In issuing its original (May 3) ruling granting defendant's motion to suppress the blood alcohol test results, the trial court stated, in pertinent part:
Unfortunately, the State Trooper in the situation used a kit that says expiration date 7/88. Now, I don't know whether that means 7/1/88. I don't know whether that means 7/31/88. And unfortunately because the test kit that was used was dated 7/88, the Motion to Suppress is granted.
Thereafter, at the July 6, 1989, hearing on the state's motion to reconsider the May 3 ruling granting the motion to suppress, the prosecutor argued that the sole issue for decision on the motion to suppress was whether or not defendant's blood had been constitutionally seized. Thus, the prosecutor argued that the question of whether or not the expiration date of the blood alcohol kit had lapsed was a fact question as to the admissibility and weight of the test results to be resolved at trial rather than by the pretrial motion to suppress which is concerned only with the constitutionality of the seizure of defendant's blood. At the conclusion of arguments by the state and the defense, the trial court indicated its apparent agreement with the prosecutor's arguments referenced above. In doing so, the court stated:
The Court agrees with Mr. Rhodes on the fact that this should have been limited to a purely constitutional ground and the judgment on that motion is recalled and his motion to suppress is hereby denied.

ASSIGNMENTS OF ERROR NOS. ONE AND TWO:
In these assignments, defendant contends that the trial court erred by ruling that the alleged defect of the blood alcohol kit (i.e., that its expiration date had elapsed) was not of a constitutional stature and that, thus, the motion to suppress did not lie on the basis of that alleged defect. Citing State v. Tanner, 457 So.2d 1172 (La.1984), defendant argues that his motion to suppress was the proper procedural vehicle to resolve the question of the admissibility of his blood test results through a pretrial ruling on the question; and, thus, defendant concludes that the original ruling of the trial court granting his motion to suppress should be reinstated.
Initially, we note that LSA-C. Cr.P. art. 703F provides that "[a] ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial." [Emphasis added] The implication of this limitation is that a ruling on a motion to suppress is not binding until trial begins. State v. Thompson, 448 So.2d 666, 669 (La.), reversed on other grounds, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). *680 However, out of concern for the expeditious treatment of a motion to suppress and because of other fairness and policy considerations, the jurisprudence has limited the "not binding until trial begins" implication by interpreting it as prohibiting both the state and the defendant from seeking a rehearing on a motion to suppress in order to introduce new evidence once a trial court rules on a motion to suppress. In addition, reargument and reconsideration of the motion based on evidence previously introduced should be sparingly made and limited to instances wherein the trial court firmly believes that its prior decision was legally infirm. See State v. Thompson, 448 So.2d at 669; State v. Landry, 339 So.2d 8 (La.1976). See also State v. Charles, 511 So.2d 1164, 1168 n. 2 (La.App. 1st Cir.), writ denied, 515 So.2d 1107 (La.1987); State v. Martin, 509 So.2d 160, 164 (La.App. 1st Cir.1987), reversed on other grounds, 519 So.2d 87 (La.1988); State v. Richmond, 464 So.2d 430, 435-436 (La.App. 1st Cir.), writ denied, 467 So.2d 535 (La.1985). Herein, the record reflects (and defendant apparently concedes in brief) that additional evidence was not introduced at the July 6 reopened suppression hearing which was limited to reargument and reconsideration of defendant's motion to suppress. Hence, we find that the trial court's decision to hold this reopened suppression hearing was consistent with the jurisprudential rules set forth above and within the trial court's discretion. We now refocus our attention on the contentions and arguments of defendant in his assignments one and two relating to the trial court's original ruling (on May 3, 1989) and the July 6, 1989, decision of the trial court recalling its original ruling and issuing a new ruling denying the motion to suppress.
Generally, questions of admissibility, relevance and weight of evidence are properly resolved at trial on the merits, not by pretrial motions. State v. Tanner, 457 So.2d at 1174. Nonetheless, in view of the vital role that the rebuttable presumption of intoxication set forth in LSA-R.S. 32:662 plays in determining guilt in criminal prosecutions (such as those for DWI, negligent homicide and vehicular homicide) and the highly prejudicial nature of chemical test results if wrongfully introduced, the Tanner Court decided that it would serve the orderly administration of justice and further insure the defendant a fair trial if the determination of the admissibility of the test results could be decided in a pretrial proceeding. State v. Tanner, 457 So.2d at 1174. Hence, (pursuant to LSA-C.Cr.P. art. 3) the Tanner Court held that a motion to suppress is available to question the admissibility of chemical test results that can result in the legal presumption of intoxication. State v. Tanner, 457 So.2d at 1175.
Additionally, in order for the state to avail itself of the statutory presumption of a defendant's intoxication arising from a chemical analysis conducted pursuant to LSA-R.S. 32:662, the state must show that it has promulgated detailed procedures which insure the integrity and reliability of the chemical test, including provisions for repair, maintenance, inspection, cleaning, certification and chemical accuracy. The state must further show that there has been strict compliance with the promulgated regulations. State v. Rowell, 517 So.2d 799, 800 (La.1988). See also LSA-R.S. 32:663.
Herein, we concur in the trial court's observations at the time of its original (May 3) ruling regarding the expiration date "7/88" appearing on the box containing the blood alcohol kit. That date standing alone does not definitively reflect if the expiration date of the kit was July 1, 1988; July 31, 1988; or some date between July 1 and July 31, 1988. Thus, without additional evidence as to the exact date of expiration of the kit, the date "7/88" is ambivalent; and, in this case, because defendant's blood was drawn on July 17, 1988, a determination of the exact date of expiration of the blood alcohol kit is necessary in order to insure the integrity and reliability of the blood test results. With the evidence in its current posture, the state failed to meet its burden of proof as to the admissibility of the blood test results; and, thus, the trial *681 court's original ruling granting the motion to suppress was correct. However, in accordance with State v. Tanner, because defendant's motion to suppress encompassed the issue of the alleged defect of the blood alcohol kit regarding its expiration date, the trial court clearly erred at the July 6 reopened hearing by deciding that that issue was beyond the scope of the motion to suppress.
Notwithstanding the jurisprudential limitations on rehearings of motions to suppress previously discussed herein, an appellate court may remand a case for a reopened suppression hearing in order to cure an erroneous ruling or to order such a remand when the evidence introduced at an original hearing on a motion to suppress is incomplete or ambivalent. See e.g. State v. Kennedy, 438 So.2d 210, 212 (La.1983); State v. Schaub, 563 So.2d 974, 976 (La. App. 1st Cir.1990); State v. Cabanas, 552 So.2d 1040, 1046 (La.App. 1st Cir.1989), writ denied, 556 So.2d 41 (La.1990). Because the ambivalent evidence of the expiration date of the blood alcohol kit used to draw defendant's blood does not establish that the expiration date of that kit had not elapsed prior to July 17, 1988, (the date defendant's blood was drawn), the state failed to establish that the blood test results in this case were admissible. Hence, we remand this case to the trial court to receive, at the reopened hearing, evidence relevant to the expiration date of the blood alcohol kit used in this case. If the trial court finds, in light of any new evidence introduced at the reopened hearing and the evidence previously introduced, that the blood test results are inadmissible, the trial court must afford defendant an opportunity to withdraw his guilty pleas. Otherwise, we reserve to defendant the right to timely appeal any adverse ruling on the motion to suppress within five days of that ruling. In the absence of such an appeal, the present conditional affirmance of defendant's convictions and sentences becomes absolute. Cf. State v. Kennedy, 438 So.2d at 212; State v. Cabanas, 552 So.2d at 1046.
CONVICTIONS AND SENTENCES CONDITIONALLY AFFIRMED, REMANDED FOR A REOPENED SUPPRESSION HEARING.
NOTES
[1] The use of the middle initial F in the caption is an inadvertent error. The record reflects that the correct name of defendant is Danny Paul Fitch.
[2] We note that, although defendant's written motion to suppress also sought to suppress the use of other physical evidence and any statements made by defendant, the initial comments by the prosecutor and defense counsel at the beginning of the suppression hearing reflect that the hearing was limited to the matter of the blood alcohol test. Accordingly, the trial court's ruling on the motion to suppress was limited to the issue of the admissibility of the blood alcohol test results.